**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| CRUM AND FORSTER SPECIALTY INSURANCE COMPANY<br><br>Plaintiff,<br><br>v.<br><br>1st PREMIER RESTORATION INC, ERICA RODRIGUEZ, PETER TORRES, MICHAEL NESTAD, and DIANA CORDOVA-NESTAD,<br><br>Defendants. | Case No.: 1:24-cv-06438 |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Crum and Forster Specialty Insurance Company ("CFSIC"), by and through its undersigned counsel, as and for its Complaint for Declaratory Judgment against 1st Premier Restoration Inc. ("Premier"), Erica Rodriguez, Peter Torres, Michael Nestad and Diana Cordova-Nestad, states as follows:

**NATURE OF THE ACTION**

1. In this action, CFSIC seeks a determination of its rights and obligations under an insurance policy issued to Premier in connection with the Underlying Action (as defined herein) filed by Defendants Michael Nestad and Diana Cordova-Nestad, which asserts certain claims against Premier as well as Erica Rodriguez and Peter Torres.

2. The Underlying Action (defined herein) is pending the Circuit Court of Cook Count, Illinois.

3. Plaintiff CFSIC issued a commercial general liability policy ("Policy", as defined herein) to Premier as described more fully below.

4. Defendant Premier tendered the claims asserted against it in the Underlying Action to CFSIC for a defense and indemnity under the Policy.

5. The scope of coverage available to Premier, Ms. Rodriguez, and Mr. Torres (collectively, the "Underlying Defendants") in connection with the claims asserted against them in the Underlying Action is governed by the terms, conditions and exclusions of the Policy.

## JURISDICTION AND VENUE

6. Jurisdiction in this matter is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1).

7. Plaintiff CFSIC is a corporation organized under the laws of the State of Delaware with its principal place of business in Morristown, New Jersey. At all times relevant, CFSIC conducted business in the State of Illinois.

8. Defendant Premier is a corporation organized under the laws of the State of Illinois with its principal place of business in Palos Hills, Illinois.

9. Defendant Erica Rodriguez is a resident of Hickory Hills, Illinois and citizen of the State of Illinois.

10. Defendant Peter Torres is a resident of Hickory Hills, Illinois and citizen of the State of Illinois.

11. Defendant Michael Nestad is a resident of Chicago, Illinois and citizen of the State of Illinois. Plaintiff CFSIC does not assert any claim against Defendant Nestad in the Complaint and Mr. Nestad has been named as a defendant in this action solely as a necessary and indispensable party.

12. Defendant Diana Cordova-Nestad is a resident of Chicago, Illinois and citizen of the State of Illinois. Plaintiff CFSIC does not assert any claim against Defendant Cordova-Nestad

in the Complaint and Ms. Cordova-Nestad has been named as a defendant in this action solely as a necessary and indispensable party.

13. Diversity jurisdiction exists because: (a) there is complete diversity of citizenship between Plaintiff CFSIC, on the one hand, and Defendants Premier, Ms. Rodriguez, Mr. Torres, Mr. Nestad and Ms. Cordova-Nestad, on the other hand; and (b) the amount in controversy, including the potential costs of defending and indemnifying the Underlying Defendants with regard to the Underlying Action, exceeds $75,000, exclusive of interest and costs.

14. An actual justiciable controversy exists between CFSIC, on the one hand, and Defendants Premier, Ms. Rodriguez, Mr. Torres, Mr. Nestad and Ms. Cordova-Nestad, on the other hand, and by the terms provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is invested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

## THE UNDERLYING ACTION

15. On January 31, 2024, Michael Nestad and Diana Cordova-Nestad ("Owners") filed a complaint against the Underlying Defendants styled *Michael Nestad and Diana Cordova-Nestad v. 1st Premier Restoration Inc. et al.*, Case No. 2024-L-1169, in the Circuit Court of Cook County, Illinois (the "Underlying Action").

16. The complaint in the Underlying Action (the "Complaint") alleges the Owners' single-family residence located at 10334 S. Springfield, Ave., Chicago, IL (the "Residence") suffered extensive weather damage on or about February 20, 2021. A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

17. The Complaint alleges that Ms. Rodriguez is the CEO, President, Secretary, and Director of Premier and Mr. Torres is the Vice President and Business Development Manager of Premier. Ex. A, ¶¶ 3-4.

18. The Complaint alleges that the Owners contacted their hazard insurance carrier concerning the damage and that the hazard insurance carrier sent Mr. Torres to the Residence to perform a home repair assessment which was to be paid under the Owners' property and casualty insurance policy. Ex. A, ¶ 8.

19. The Complaint alleges that the Owners and Mr. Torres discussed that Premier would pack, move and store the contents of the Residence, perform water mitigation, repair all damage to the Residence including the roof; and, upon completion of said repairs, Premier would deliver and unpack the contents of the Residence. Ex. A, ¶ 9.

20. The Complaint alleges that a contract was entered into between Premier and the Owners on March 22, 2021. Ex. A, ¶ 10.

21. The Complaint alleges that, on April 9, 2021, Premier was paid from insurance proceeds the sum of $4,617.92 to commence work. Ex. A, ¶ 12.

22. The Complaint further alleges that, on or about August 26, 2021, Mr. Torres advised the Owners that Premier would not commence any further work until it received more insurance proceeds, unless the Owners advanced $20,000 to Premier. Ex. A, ¶ 13.

23. The Complaint further alleges that the Owners tendered to Premier a personal check in the amount of $20,000 (the "Advance Payment") under the condition that the Owners would be reimbursed from insurance proceeds. Ex. A, ¶ 14.

24. The Complaint alleges that Premier failed to meet with the Owners to review work at the Residence. Ex. A, ¶ 18.

25. The Complaint further alleges that the Advance Payment was never reimbursed and that their numerous emails and texts were ignored. Ex. A, ¶ 18.

26. The Complaint alleges that, on or about September 29, 2022, the Owners' mortgagee sent an inspector to the Residence to evaluate the progress. Ex. A, ¶ 19.

27. The Complaint alleges that the mortgagee's inspection revealed that only 5% of the work had been completed and the Residence still had active leaks. Ex. A, ¶ 20.

28. The Complaint further alleges that the 5% of the work which Premier did perform at the residence was shoddy and done in an unworkmanlike manner. Ex. A, ¶ 23.

29. Count I of the Complaint, entitled Violations of the Home Repair Act and Consumer Fraud Act, alleges that Premier violated the Home Repair Act because its contract did not conform with requirements provided by the Home Repair Act. Ex. A, ¶¶ 24-26.

30. Count I of the Complaint further alleges that Premier engaged in the following unfair and/or deceptive practices declared unlawful under the Consumer Fraud Act:

    a. Failing to provide Owners with a written three-day notice of cancellation that complies with Section 2B of the Consumer Fraud Act;
    b. Failing to orally advise Owners of their three-day right to cancel, as required by Section 2B of the Consumer Fraud Act;
    c. Performing home repair work to Owners' Residence in a shoddy and unworkmanlike manner;
    d. Misrepresenting to Owners that the total cost of the home repair work will be the amount that Owners' insurance company agrees to pay, with the intent that Owners rely on this misrepresentation, but soliciting, then collecting more than that from Owners in the form of an Advance Payment of $20,000 to Company;
    e. Willfully failing to inform Owners that Company will demand the full insurance payout from Owners' insurance company, even for work that Company had no intention of performing, and failed to perform;
    f. Misrepresenting to Owners the total cost of services with the intent that Owners rely on such misrepresentation, and then collecting money over and above the amount represented;
    g. Misrepresenting to Owners that Company will give Owners written estimates detailing the exact costs and materials to be used prior to

                    Company starting work, with the intent that Owners rely on such representation, but then failing to provide written estimates to Owners;
h. Accepting and/or demanding insurance proceeds from Owners' insurance payouts designated for other than work performed; and
i. Using a document as a contract that fails to comport with the requirements of Illinois law by failing to state the total cost, including parts and materials listed with reasonable particularity and any charge for an estimate.

Ex. A, ¶¶ 27.

31. Count I of the Complaint alleges that Premier received $89,485.65 from insurance proceeds plus $20,000 of Owners' Advance Payment for a total of $109,485.65. Ex. A, ¶ 30.

32. Count I further alleges that the Owners have been damaged in that Premier collected insurance proceeds for work it did not perform and placed Owners in the compromised position of leaving the Residence 5% repaired. Count I further alleges that the 5% of work performed by Premier was done in a shoddy and unworkmanlike manner; and caused Owners to cash out/by back their accumulated retirement benefits to fix the shoddy work and to have the remaining 95% of the other work completed, and move contents to storage and then back to the Residence. Ex. A, ¶ 33.

33. Count II of the Complaint, entitled Unjust Enrichment, alleges Premier has retained $89,485.65 of the insurance proceeds and $20,000 of the Owners' Advance Payment for work that Premier never completed and for other work that was shoddy and done in an unworkmanlike manner. Ex. A, ¶¶ 34-35.

34. Count III of the Complaint, entitled Fraud, alleges that Premier and Mr. Torres made false statements to the Owners with the intent to induce the Owners to tender the Advance Payment and to endorse other insurance checks. Ex. A, ¶¶ 37-38.

35. In the Complaint, the Owners seeks an order requiring Premier, Mr. Torres and Ms. Rodriguez to pay the owners $109,485.65; reasonable attorney fees/costs; and other relief the court deems just and equitable. Ex. A, p. 11.

## **THE POLICY**

36. CFSIC issued commercial general liability policy no. BAK-46405-3, effective from December 18, 2020 to December 18, 2021, to named insured 1st Premier Restoration Inc. A true and correct copy of the Policy is attached hereto as **Exhibit B**.

37. The Commercial General Liability Part of the Policy provides a $1 million per occurrence limit with a $2 million general aggregate limit. Ex. B, p. 10.

38. The Policy's Common Policy Declarations identifies the Business Description of Premier as "Residential Carpentry". Ex. B, p. 2.

39. On the Policy's Commercial General Liability Coverage Part Declarations, Premier's work is classified as "Carpentry – interior" and "Carpentry." Ex. B, p. 10.

40. The Policy contains the following relevant provisions:

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" to which this insurance does not apply. . . .

\* \* \*

    **b.** This insurance applies to "bodily injury" . . . only if:

  **(1)**  The "bodily injury" . . . is caused by an "occurrence" that takes place in the "coverage territory";

  **(2)**  The "bodily injury" . . . occurs during the policy period; and

  **(3)**  Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" . . . had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" . . . occurred, then any continuation, change or resumption of such "bodily injury" or . . . during or after the policy period will be deemed to have been known prior to the policy period.

     \* \* \*

**2.**  **Exclusions**

This insurance does not apply to:

     \* \* \*

  **b.**  **Contractual Liability**

    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. . . .

     \* \* \*

  **j.**  **Damage To Property**

    "Property damage" to:

     \* \* \*

  **(5)**  That particular part of real property on which you or any contractor or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

  **(6)**  Thar particular part of any property, that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \*

**l.** **Damage To Your Work**

"Property damage" to "your work" arising out it or any part of it and included in the "products-completed operation hazard."

\* \* \*

**m.** **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

\* \* \*

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

\* \* \*

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

\* \* \*

**SECTION V – DEFINITIONS**

\* \* \*

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

**6.** "Executive officer" means a person holding any of the officer positions crated by your charter, constitution, by-laws or any other similar governing document.

\* \* \*

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

\* \* \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

**16.** "Products-completed operations hazard":

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except . . . .

\* \* \*

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

 22. "Your work":

  **a.** Means:

   **(1)** Work or operations performed by you or on your behalf; and

   **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes:

   **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

   **(2)** The providing of or failure to provide warnings or instructions.

Ex. B, pp. 12-13, 16, 20, 24-27.

 41. The Policy also contains a Limitation of Coverage to Business Description endorsement (the "Business Description Endorsement") which provides as follows:

**SCHEDULE**

BUSINESS DESCRIPTION: Residential Carpentry

A. **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1, Insuring Agreement, b.** is amended and the following added:

 **(4)** The . . . "property damage" is caused by or results from the business described in the Schedule.

* * *

Ex. B, p. 42.

## THIS DISPUTE

42. Defendant Premier has sought a defense and indemnity from CFSIC under the Policy in connection with the claims asserted against it and the other Underlying Defendants in the Underlying Action.

43. Plaintiff CFSIC has determined through its coverage investigation that it owes no obligation under the Policy to defend or indemnify the Underlying Defendants in connection with the claims asserted against them in the Underlying Action.

44. Plaintiff CFSIC has advised the Underlying Defendants in writing that it disclaims any obligation under the Policy to defend and/or indemnify them in connection with the claims asserted against them in the Underlying Action.

45. Plaintiff CFSIC now brings this action to obtain a judicial declaration that it owes no duties under the Policy to defend or the Underlying Defendants in connection with the claims asserted against it in the Underlying Action.

**COUNT I**
**No Duty to Defend or Indemnify**

46. CFSIC incorporates by reference herein paragraphs 1 through 45 as if the same were fully set forth at length.

47. The Insuring Agreement of the Policy provides that CFSIC will pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Ex. B, p. 12

48. The Policy defines "property damage" to mean "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." Ex. B, p. 26.

49. The Policy defines "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Ex. B, p. 25.

50. The Insuring Agreement of the Policy states that the insurance only applies if "'property damage' occurs during the policy period." Ex. B, p. 12.

51. The Complaint alleges that Premier failed to do certain work which it contracted to perform on the Residence and that the work Premier did perform on the Residence was shoddy and done in an unworkmanlike manner. Ex. A, ¶ 23.

52. Accordingly, the Policy would not afford coverage to the Underlying Defendants for the claims asserted against them in the Underlying Action to the extent the Complaint does not allege "property damage" caused by an "occurrence" and to the extent the alleged "property damage" occurred after the effective date of the Policy.

53. Section II – WHO IS AN INSURED of the Policy provides, in pertinent part, that "[i]f you are designated in the Declarations as . . . [a]n organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your offices or directors." Ex. B, p. 20.

54. To the extent Ms. Rodriguez and Mr. Torres do not qualify as "insureds" under the Policy, no coverage is afforded under the Policy for the claims asserted against them in the Underlying Action.

55. To the extent the Complaint could reasonably be construed as satisfying the Insuring Agreement of the Policy, certain exclusions and endorsements in the Policy operate to preclude coverage in this matter.

56. Exclusion **b.** of Coverage A of the Policy precludes coverage for "'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." Ex. B, p. 13.

57. The Complaint alleges that the Underlying Defendants breached their agreement with the Owners by failing to reimburse the Owners for the Advance Payment and failing to perform the agreed upon work. Ex. A, ¶ 27.

58. Accordingly, even if the allegations of the Complaint met the requirements of the Insuring Agreement of the Policy, the Policy would not afford coverage to the Underlying Defendants for the claims asserted against them in the Underlying Action pursuant to the operation of Exclusion **b.**

59. Exclusion **j.(5)** of Coverage A of Policy precludes coverage for "property damage" to "[t]hat particular part of real property on which [Premier] . . . [is] performing operations, if the 'property damage' arises out of those operations." Ex. B, p. 16.

60. The Complaint alleges that the Underlying Defendants' work at the Residence was done in a shoddy and unworkmanlike manner. Ex. A, ¶ 23.

61. The Complaint does not allege any "property damage" beyond the work done by the Underlying Defendants.

62. Accordingly, even if the allegations of the Complaint met the requirement of the Insuring Agreement of the Policy, the Policy would not afford coverage to the Underlying Defendants for the claims asserted against them in the Underlying Action pursuant to the operation of Exclusion **j.(5)**.

63. Exclusion **j.(6)** of Coverage A of the Policy precludes coverage for "property damage" to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Ex. B, p. 16.

64. The Policy defines "your work" as "[w]ork or operations performed by you or on your behalf and [m]aterials, parts or equipment furnished in connection with such work or

operations." The definition includes "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work.'" Ex. B, p. 27.

65. Exclusion **j.(6)** does not apply to "property damage" included in the "products completed operations hazard." Ex. B, p. 16.

66. The Policy defines "products-completed operations hazard" as "'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work.'" Ex. B, p. 16.

67. The Complaint alleges that the Underlying Defendants' work at the Residence was done in a shoddy and unworkmanlike manner. Ex. A, ¶ 23.

68. The Complaint does not allege any "property damage" beyond the work done by the Underlying Defendants.

69. Accordingly, even if the allegations of the Complaint met the requirements of the Insuring Agreement of the Policy, the Policy would not afford coverage to the Underlying Defendants for the claims asserted against them in the Underlying Action pursuant to the operation of Exclusion **j.(6)**.

70. Exclusion **l.** of Coverage A of the Policy precludes coverage for "property damage" to "'your work' arising out of it or any part of it and included in the 'products-hazard completed operations hazard.'" Ex. B, p. 16.

71. Exclusion **l.** provides that it "does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." Ex. B, p. 16.

72. The Policy defines "your work" as "[w]ork or operations performed by you or on your behalf and [m]aterials, parts or equipment furnished in connection with such work or operations." Ex. B, p. 27.

73. The Policy defines "products-completed operations hazard" as "'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work.'" Ex. B, p. 26.

74. The Complaint alleges that the Underlying Defendants' work at the Residence was done in a shoddy and unworkmanlike manner. Ex. A, ¶ 23.

75. The Complaint does not allege any "property damage" beyond the work done by the Underlying Defendants.

76. Accordingly, even if the allegations of the Complaint met the requirements of the Insuring Agreement of the Policy, the Policy would not afford coverage to the Underlying Defendants for the claims asserted against them in the Underlying Action pursuant to the operation of Exclusion **l.**

77. Exclusion **m.** of Coverage A of the Policy precludes coverage for "property damage" to "'impaired property'" or property that has not been physically injured, arising out of [a] defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work' . . . . or "[a] delay for failure by your or anyone acting on our behalf to perform a contract or agreement . . . ." Ex. B, p. 16.

78. The Policy defines "impaired property" to mean "tangible property, other than . . . 'your work', that cannot be used or is less useful because . . . it incorporates . . . 'your work' that is known or thought to be defective, deficient, inadequate or dangerous; or . . . 'You' have failed to fulfil the terms of a contract or agreement." Ex. B, p. 24.

79. The Complaint alleges that the Underlying Defendants' work at the Residence was done in a shoddy and unworkmanlike manner, that 95% of the work was not completed by the

Underlying Defendants, and that Residence was uninhabitable until the work at the Residence was completed by others. Ex. A, ¶ 33.

80. Accordingly, even if the allegations of the Complaint met the requirements of the Insuring Agreement of the Policy, the Policy would not afford coverage to the Underlying Defendants for the claims asserted against them in the Underlying Action pursuant to the operation of Exclusion **m.**

81. The Policy also contains a Business Description Endorsement which amends the Insuring Agreement under Coverage A to provide that CFSIC "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage'" that "is caused by or results from the business described in the Schedule." Ex. B, p. 42.

82. The Schedule of the Business Description Endorsement provides the following business description: "Residential carpentry". Ex. B, p. 42.

83. Further, the Policy's Common Policy Declarations identifies the Business Description of Premier as "Residential Carpentry". Ex. B, p. 2.

84. On the Policy's Commercial General Liability Coverage Part Declarations, Premier's work is classified as "Carpentry – interior" and "Carpentry." Ex. B, p. 10.

85. The Complaint alleges that Premier was contracted to pack and store the contents of the Residence, perform water mitigation, repair all damage to the Residence including the roof, and, upon completion of said repairs, deliver and unpack the contents of the Residence. Ex. A, ¶ 9.

86. The Complaint alleges that Premier performed and/or agreed to perform several categories of work which would not qualify as "Residential carpentry" as required under the

Insuring Agreement of Coverage A of the Policy, as amended by the Policy's Business Description Endorsement.

87. Moreover, much of the alleged conduct of Premier would not fall within the business description or classification identified on the declarations pages of the Policy.

88. Accordingly, CFSIC does not owe any obligation under the Policy to defend or indemnify the Underlying Defendants in connection with the claims asserted against them in the Underlying Action to the extent that the Complaint does not include allegations that fall within the scope of coverage afforded under the Insuring Agreement of Coverage A of the Policy, as amended by the Business Description Endorsement.

WHEREFORE, Plaintiff CFSIC seeks a judgment that it owes not duty under the Policy to defend or indemnify the Underlying Defendants in connection with the claims asserted against them in the Underlying Action.

## **PRAYER FOR RELIEF**

Plaintiff, Crum and Forster Specialty Insurance Company, hereby respectfully request the entry of an order and judgment in its favor and against 1st Premier Restoration Inc, Eric Rodriguez, Peter Torrez, Michael Nestad and Diana Cordova-Nestad, declaring as follows:

a. This court has jurisdiction over the parties and the subject matter of this litigation;

b. The Policy does not provide coverage to the Underlying Defendants for the claims asserted against them in the Underlying Action;

c. Crum and Forster Specialty Insurance Company does not owe a duty under the Policy to defend the Underlying Defendants in connection with the claims asserted against them in the Underlying Action;

d. Crum and Forster Specialty Insurance Company does not owe a duty under the Policy to indemnify the Underlying Defendants in connection with the claims asserted against it in the Underlying Action;

    e.    Crum and Forster Specialty Insurance Company is entitled to an award of its costs; and

    f.    Such other further relief as this Court deems just and appropriate.

Dated: July 25, 2024

        Respectfully Submitted,

By:    */s/ James J. Hickey*
    James J. Hickey, Atty. No. 6198334
    Colin B. Willmott, Atty. No. 6317451
    James.Hickey@kennedyslaw.com
    Colin.Willmott@kennedyslaw.com
    KENNEDYS CMK
    30 S. Wacker Drive, Suite 3650
    Chicago, IL 60606
    Phone: (312) 800-5029
    Fax: (312) 207-2110

*Attorneys for Crum and Forster Specialty Insurance Company*